UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ROBERT EARL BENTLEY,

        Plaintiff,              Case No. 1:15-cv-313

v.                                        Honorable Janet T. Neff

UNKNOWN ALLEN et al.,

        Defendants.

_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Robert Earl Bentley presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF), though the actions about which he complains occurred while he was housed at the Richard A. Handlon Correctional Facility (MTU). Both facilities are located in Ionia, Michigan. Plaintiff sues the following MTU employees: Assistant Resident Unit Manager (ARUM) (unknown) Allen; Mail Room Supervisor P. Dickson; and Assistant Resident Unit Supervisor (ARUS) (unknown) Wenglikowski.

Plaintiff alleges that, in September 2013, he requested "pertinent legal documents" from an unknown source on a request under the Freedom of Information Act (FOIA), MICH. COMP. LAWS § 15.231 *et seq.*, which he claims were relevant to his filing a timely application for leave to appeal to the Michigan Supreme Court. (Compl. ¶ 7, docket #1, Page ID#3.) On approximately October 7, 2013, Plaintiff's wife obtained documents and forwarded them to Plaintiff by priority mail. Plaintiff alleges that he did not receive the documents promptly, which he claims caused him to miss his supreme court deadline. Plaintiff asked ARUS Rosen about his documents, and Rosen instructed him to send a kite to the mailroom if he did not receive a response. On October 18, 2013, Plaintiff spoke with Defendant Allen about the missing documents. Allen instructed Plaintiff to send a kite to Kim Grant, which Plaintiff did. Grant responded on October 20, 2013, advising Plaintiff that his legal materials had been rejected and that his complaint would be handled through the process applicable to mail rejection. On October 31, 2013, Plaintiff filed a grievance about the matter. Plaintiff complains that the notice of intent to reject his mail was not issued until "around November 26, 2013." (Compl. ¶ 9, docket #1, Page ID#3.) He alleges that he received a hearing on the notice of intent on November 26, 2013. Plaintiff acknowledges, however, that he had

received the approved portion of his documents on November 6, 2013. (*See* Pl.'s Let. to Rozen, docket #1-1, Page ID#20.)[1]

On December 18, 2013, Defendant Wenglikowski came to Plaintiff's cell and directed Plaintiff to accompany Wenglikowski to his office to discuss a disbursement form Plaintiff sent to Wenglikowski on November 26, 2013, authorizing the return of the rejected mail to Plaintiff's wife. Plaintiff learned that the documents had not been mailed yet, and he filed a grievance against Wenglikowski. Wenglikowski told Plaintiff, "I received an e-mail from the warden's office regarding your complaint against me. . . . You need not worry about the complaint/grievance because you just bought yourself a ticket out of here . . . ." (Compl., Page ID#4.) Plaintiff previously had filed a grievance against Wenglikowski, and he filed another grievance after the meeting. Plaintiff subsequently was transferred from MTU to ICF.

On January 2, 2014, after Plaintiff had been transferred, ICF Counselor Smith called Plaintiff out of his cell and informed him that he had received an e-mail from MTU about Plaintiff's legal papers, saying that the papers would be transferred to ICF. Plaintiff received a letter explaining that resolution of his Step II grievance would take longer than provided in MDOC Policy Directive 03.02.130, and informing Plaintiff that he would receive a response by January 21, 2014. On January 28, 2014, Counselor Smith told Plaintiff that the Step II response had been sent to MTU rather than ICF. Plaintiff filed his Step III appeal on or about February 1, 2014.[2]

---

[1]In the same letter, Plaintiff originally typed that he received the notice on "11/06/2013," but "06" was hand-changed to "26," possibly to conform with the allegations in Plaintiff's complaint. (*See* Pl.'s Let. to Rozen, docket #1-1, Page ID#20.) In addition, according to the Step I grievance response signed by Defendant Dickson on November 13, 2013, the mail rejection was issued on November 5, 2013, indicating that 129 pages of mail had been excerpted because they violated mail policy 05.03.118 ¶ MM by including the personal information of witnesses. (*See* Step I response, docket #1-1, Page ID#13.)

[2]Plaintiff alleges that he filed his Step III grievance on January 2, 2014, but that date appears to be a typographical error, given that the Step II grievance response was not issued until January 14, 2014. (Plaintiff therefore could not have filed his appeal before that date. (*See* Step II grievance response, docket #1-1, Page ID#14.) The Court

Plaintiff's Step III grievance appeal was denied on April 1, 2014. (Step III response, Page ID#15.) On July 12, 2014, Plaintiff was sent a memorandum notifying him that the time limit under MDOC Policy Directive 04.07.112 for disposing of his legal papers had expired and that Plaintiff had ten days from the date of the memorandum to have his property picked up by a visitor or to mail the property out of the facility, or it would be destroyed.[3] Plaintiff complains that his property ultimately was destroyed.

Plaintiff alleges that Defendant Allen violated his First Amendment rights when Allen failed to resolve Plaintiff's grievances in a satisfactory manner. Plaintiff also asserts that Defendant Dickson violated his procedural and substantive due process rights when she failed to comply with prison policies requiring her to provide him a rejection notice promptly after impounding his mail and to issue a timely notice of consent to reject the materials. In addition, Plaintiff complains that Defendant Wenglikowski retaliated against him for filing grievances by having him transferred to ICF. Plaintiff also suggests that Defendants' failure to timely deliver the legal mail sent by his wife resulted in his inability to file a timely application for leave to appeal to the Michigan Supreme Court, thereby depriving him of his right to access the courts.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

---

has assumed that the date "1-2-14" was a typographical transposition of "2-1-14." In any event, because the Step III grievance was considered on the merits, the date is not relevant to the disposition of the case.

[3]In his complaint, Plaintiff alleges that the memorandum notifying him of the time limit for disposing of his property was sent to him on "1-2-14." (Compl. ¶ 13, Page ID#4.) However, Plaintiff has attached to his complaint a copy of the notification, which is dated "July 12, 2014." (7/12/14 Notification, Page ID#27.) The Court has used the only reasonable date, the date of the notification memorandum, which, by signature, Plaintiff acknowledged receiving on July 14, 2014. (*Id.*)

**Discussion**

I.        Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Defendants Allen & Dickson

Plaintiff alleges that he told Defendant Allen on October 7, 2013 that he had not received certain legal mail sent to him, but Allen failed to resolve the problem. Plaintiff alleges that Dickson failed to handle his grievance properly and failed to ensure that the rejection of his documents was done in accordance with MDOC Policy Directive 05.03.118 and that Plaintiff's documents were returned to Plaintiff's wife.

To the extent Plaintiff complains that Allen and Dickson did not properly supervise their subordinates or take action to resolve his complaints, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.

*See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Because Plaintiff alleges no active conduct by Defendants Allen and Dickson, he fails to state a claim against them.

Even had Plaintiff alleged active conduct against Allen and Dickson, his allegations fail to state a claim.

1.     First Amendment – Grievance Process

Plaintiff claims that Defendant Allen violated his First Amendment right to redress of grievances by not handling Plaintiff's grievance properly. The Petition Clause of the First Amendment guarantees the right "to petition the Government for a redress of grievances." U.S. CONST. amend. I. The Sixth Circuit long has recognized that a prisoner has an "undisputed First Amendment right to file grievances against prison officials on his own behalf." *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)*; Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). As a consequence, a prisoner may not be subjected to retaliation for filing a grievance. *Id.* However, this right does not encompass the right to a particular grievance procedure or to a favorable result. Indeed, the Sixth Circuit and other circuit courts repeatedly have held that there is no constitutionally protected right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Because Plaintiff does not allege that Allen retaliated against him for

filing a grievance, he fails to state a First Amendment claim against Allen.

    2.          Procedural due process

Plaintiff suggests that Defendant Dickson deprived him of due process when he failed to ensure that Plaintiff received a timely notice of rejection and a timely hearing. Specifically, he argues that he did not receive a timely Notice of Package/Mail Rejection under MDOC Policy Directive 05.03.118 ¶ 00 and that he did not receive a prompt hearing under ¶ PP of that policy.

To the extent Plaintiff claims that Defendants failed to follow prison policy, his claim is not cognizable in this action. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Plaintiff fails to state a claim based on the violation of MDOC policy.

Plaintiff next claims that Defendant Dickson violated his right to due process when she allowed his property to be held for several weeks without a hearing and then allowed it to be destroyed. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To

establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Court will assume without deciding that Plaintiff had a protected property interest in the receipt of his 129 pages of mail.

Nevertheless, Plaintiff's claim that he was deprived of his property without due process is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. A prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Moreover, by his own admission, Plaintiff received all of the process to which he was entitled. He received notice that his mail had been rejected as early as October 20, 2013, when Ms. Grant responded to his complaint. Plaintiff also admitted in a letter he sent on December 5, 2013, that he received the portion of the mailing that was not rejected on November 6, 2013, and he knew at that time that the other materials were being withheld. (*See* Pl.'s Let. to Rozen, docket #1-1, Page ID#20.) In addition, Plaintiff admits that he received a hearing about the rejection on November 26, 2013. (Compl. ¶ 10, docket #1, Page ID#3.) Plaintiff does not even argue that the hearing was inadequate. Plaintiff's sole complaint is that his notice and hearing were not as timely as he would have liked or as he believes were required by prison procedures. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional;

what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

For all these reasons, Plaintiff's allegations that Defendant Dickson deprived him of due process in the handling of his mail fails to state a claim.

3. Access to the Courts

Plaintiff alleges that, because the documents mailed by his wife were delayed, he was unable to file a timely application for leave to appeal to the Michigan Supreme Court. Arguably, Plaintiff intends to allege that he was denied access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of

legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

In the instant case, Plaintiff alleges in a conclusory fashion that, because he did not receive all of the papers mailed by his wife, he was unable to file a timely application for leave to appeal in the Michigan Supreme Court. Because he wholly fails to describe the nature of the underlying claim he intended to pursue in that court, he fails to allege actual injury within the meaning of *Lewis*, 518 U.S. at 353, and *Christopher*, 536 U.S. at 415.

Moreover, according to the public records of the Michigan Court of Appeals, the only case Plaintiff could possibly have sought to bring to the Michigan Supreme Court in 2013 was an appeal from the denial of his second motion for relief from his judgment of conviction, which he filed in the Michigan Court of Appeals on February 8, 2013. That appeal was dismissed by the court of appeals on May 3, 2013, because "an appeal from the denial or rejection of a successive motion for relief from judgment is prohibited by MCR 6.502(G)(1)." *People v. Bentley*, No. 314695 (Mich. Ct. App. May 3, 2013) (Ord. of Dismissal), http://publicdocs.courts.mi.gov:81/coa/public/orders/2013/314695(12)_order.pdf. Under the same court rule, Plaintiff was prohibited from filing an appeal to the Michigan Supreme Court. MICH. CT. R. 6.502(G)(1). As a result, any appeal would have been frivolous. Further, even if Plaintiff was entitled to file an application for leave to appeal to the Michigan Supreme Court, he would have been required to do so by June 28, 2013, 56 days after the decision of the Michigan Court of Appeals. *See* MICH. CT. R. 7.302(C)(2) (providing that the time for filing a criminal appeal is 56 days). By October 7, 2013, the date of the first conduct alleged in his complaint, any appeal period had long expired. Any attempt to appeal therefore would have been frivolous.

For all the foregoing reasons, Plaintiff fails to state an access-to-the-courts claim.

### B. Defendant Wenglikowski

Plaintiff alleges that Defendant Wenglikowski retaliated against him for filing a grievance by having Plaintiff transferred to IDF. As previously discussed, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that

would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith*, 250 F.3d at 1037 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff cannot show that his transfer to ICF from MTU was an adverse action taken against him for filing a grievance against Defendant Wenglikowski. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). The Sixth Circuit has recognized that a transfer may rise to the level of adverse action if a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, *see Siggers-El*, 412 F.3d at 702; *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007), or if the transfer would result in a prisoner's placement in segregation or in an area of the prison used to house mentally disturbed inmates. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

No such additional harm is alleged here. Plaintiff's transfer was from one level II facility to another level II facility, both of which are located in Ionia, Michigan. Such transfers from the general population of one prison to the general population of another prison are not typically an adverse action. *See Yarrow*, 78 F. App'x at 543 (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff therefore fails to state a retaliation claim against Defendant Wenglikowski.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: June 10, 2015                          /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge